UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JAMES DANIEL MATHEIN, )<br>  )<br>    Plaintiff, )<br>  )<br>vs. )<br>  )<br>C.R. BARD, INC., a corporation, and )<br>DAVOL, INC., a corporation, )<br>  )<br>    Defendants. ) | Cause No. 07-L-2031 |

### PLAINTIFF'S RULE 37(A)(2)(A) MOTION TO COMPEL DISCOVERY

COMES NOW Plaintiff James Daniel Mathein, by one of his attorneys, Joseph W. Phebus, and pursuant to Rule 37(a)(2)(A) of the Federal Rules of Civil Procedure, moves to compel the defendants to produce documents disclosed in their Rule 26(a)(1) Initial Disclosure, and in support thereof states:

1. Defendants' Initial Disclosure has disclosed the following records:

   - Davol's 510k Application for the Composix® Kugel® hernia patch, including related regulatory files and correspondence between Davol and FDA.

   - Product development project files demonstrating the development of the Composix® Kugel® Patch design.

   - Adverse event tracking information, including paper files and information stored in databases, reflecting complaints and other reports of medical complications in patients who received a Composix® Kugel® Patch.

2. However, defendants have not produced the documents but rather contented themselves with stating "Davol (the collective term used by the defendants for both of them) insists any production be after entry of an appropriate confidentiality order."

3. Plaintiff has repeatedly advised defendants that the burden is upon them to establish a legitimate need for a confidentiality order, that plaintiff does not believe they

can meet such a burden, and that plaintiff will not agree to the entry of a confidentiality order. (Plaintiff has also advised defendants that if the court finds the defendants are entitled to a confidentiality order, the plaintiff will work with them in an attempt to agree upon a form of order.)

4. The plaintiff in good faith conferred with the defendants in an attempt to resolve the dispute and obtain disclosure. Ultimately, the parties came to the conclusion that the question of whether or not the defendants were entitled to a confidentiality order would have to be decided by the court. The defendants in a telephone conference advised they would file a motion for protective order by May 7, and as a result, the plaintiff agreed to forego filing a Rule 37 motion. Thereafter, the defendants by e-mail advised that in essence they would neither produce the documents nor file a motion for protective order. Attached hereto as Exhibit 1 is the e-mail thread between the parties as to this dispute.

5. The defendants have neither filed a motion for protective order nor produced the documents thus leaving plaintiff with no recourse but to file this motion to compel discovery.

WHEREFORE plaintiff prays the court enter an order requiring defendants to within seven days produce the above-identified documents.

    JAMES DANIEL MATHEIN, Plaintiff, by his
    Attorney, Joseph W. Phebus of the law firm of
    PHEBUS & KOESTER

s/     J.W. PHEBUS
    J. W. PHEBUS
    Attorney for Plaintiff
    PHEBUS & KOESTER
    136 West Main Street
    Urbana, Illinois 61801
    Telephone: (217) 337-1400
    Fax: (217) 337-1607
    *jwphebus@phebuslaw.com*

# CERTIFICATION

Joseph W. Phebus hereby certifies as follows:

1. He is one of the attorneys for the plaintiff in this matter.

2. He has in good faith conferred with the defendants and has through e-mails and a telephone conference unsuccessfully attempted to obtain the requested discovery.

3. He in good faith believes the defendants do not have a legitimate basis for a protective order *inter alia*:

> A. Notwithstanding defense attorney's statement in e-mail that all of the models of patch remain on the market, the correct situation is that the models now on the market have been modified and the recall has not been rescinded;
>
> B. The problems with the patches should not be hidden from the public since as to his understanding approximately 70,000 individuals have one of these models of patch in them;
>
> C. All of the records are part of the 510(K) file which is required to be kept by federal law and to his understanding is not protected from discovery by federal law;
>
> D. Further, it is his understanding that the defendants may have a bias toward keeping secret problems with the patches as is indicated by the New York Times article of March 16, 2007, a copy of which is attached hereto as Exhibit 2.

                                        s/    J.W. PHEBUS
                                            J. W. PHEBUS
                                            Attorney for Plaintiff
                                            PHEBUS & KOESTER
                                            136 West Main Street
                                            Urbana, Illinois 61801
                                            Telephone: (217) 337-1400
                                            Fax: (217) 337-1607
                                            *jwphebus@phebuslaw.com*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

P. Mark Crane
Segal McCambridge Singer & Mahoney, Ltd
Suite 200
330 North Wabash Avenue
Chicago, Illinois 60611
Telephone: 312-645-7800
Fax: 312-645-7711
Email: mcrane@smsm.com

Kimberly A. Kayiwa
Segal McCambridge Singer & Mahoney, Ltd
Suite 200
330 North Wabash Avenue
Chicago, Illinois 60611
Telephone: 312-645-7800
Fax: 312-645-7711
Email: kkayiwa@smsm.com

Joe G. Hollingsworth
Spriggs & Hollingsworth
1350 I Street, NW
Washington, DC 20005
Telephone: 202-898-5800
Fax: 202-682-1639
Email: jhollingsworth@spriggs.com

Kirby T. Griffis
Spriggs & Hollingsworth
1350 I Street, NW
Washington, DC 20005
Telephone: 202-898-5800
Fax: 202-682-1639
Email: kgriffis@spriggs.com

Douglas J Phebus
Lawton & Cates
10 East Doty
Madison, WI 53703
Telephone: 608-282-6200
Fax: 608-282-6252
Email: *dphebus@lawtoncates.com*

s/   J.W. PHEBUS
J. W. PHEBUS
Attorney for Plaintiff
PHEBUS & KOESTER
136 West Main Street
Urbana, Illinois 61801
Telephone: (217) 337-1400
Fax: (217) 337-1607
*jwphebus@phebuslaw.com*

PHEBUS & KOESTER
136 West Main Street
Urbana, Illinois 61801
(217) 337-1400
*f:\docs\joe\mathein\csc.doc*

**Teresa Lee**

**From:** Griffis, Kirby T. [kgriffis@spriggs.com]
**Sent:** Friday, May 04, 2007 3:03 PM
**To:** Joe Phebus
**Cc:** dphebus@lawtoncates.com; mcrane@smsm.com
**Subject:** RE: Mathein v. Davol, Inc., et al.

Mr. Phebus:

We've determined that the issue of a need for a protective order is not ripe, as there are no responses currently due to requests for production propounded by you. As such, it would be inappropriate for us to take this up with the Court currently and we will not do so. Should we need to seek a protective order concerning production of documents in the future in this case, we will then make an appropriate motion.

Very truly yours,

Kirby Griffis

> -----Original Message-----
> **From:** Kathy Oliveira [mailto:kathy@phebuslaw.com]**On Behalf Of** Joe Phebus
> **Sent:** Wednesday, April 25, 2007 9:46 AM
> **To:** Griffis, Kirby T.
> **Cc:** dphebus@lawtoncates.com; mcrane@smsm.com
> **Subject:** RE: Mathein v. Davol, Inc., et al.
>
>
> Mr. Griffis,
>
> The burden is upon you to establish a legitimate need for a protective order and the scope thereof. I do not believe your client has a legitimate need.
>
> J.W. Phebus
> (217) 337-1400
>
> ---
>
> **From:** Griffis, Kirby T. [mailto:kgriffis@spriggs.com]
> **Sent:** Tuesday, April 24, 2007 1:27 PM
> **To:** Joe Phebus
> **Cc:** dphebus@lawtoncates.com; mcrane@smsm.com
> **Subject:** RE: Mathein v. Davol, Inc., et al.
>
> May I know what those reasons are and what law you are relying upon?
>
>> -----Original Message-----
>> **From:** Joe Phebus [mailto:joe@phebuslaw.com]
>> **Sent:** Tuesday, April 24, 2007 2:29 PM
>> **To:** Griffis, Kirby T.
>> **Cc:** dphebus@lawtoncates.com; mcrane@smsm.com
>> **Subject:** RE: Mathein v. Davol, Inc., et al.
>>
>> For the third time, I repeat plaintiff will not agree to a protective order. This is for a variety of reasons.

5/18/2007

PLAINTIFF'S EXHIBIT 1

-----Original Message-----
**From:** Griffis, Kirby T. [mailto:kgriffis@spriggs.com]
**Sent:** Tuesday, April 24, 2007 11:40 AM
**To:** Joe Phebus
**Cc:** dphebus@lawtoncates.com; mcrane@smsm.com
**Subject:** RE: Mathein v. Davol, Inc., et al.

Dear Joe:

The basis for your contention that a protective order was unwarranted was that the product has been recalled and is off the market. That is incorrect - all nine models remain on the market. You are unique among the plaintiffs' attorneys in this litigation in taking the position that a protective order is unwarranted, and I believe that it is because of this misunderstanding. If not, please advise as to the legal basis under applicable law for no protective order to apply to this case.

Kirby Griffis

> -----Original Message-----
> **From:** Teresa Lee [mailto:teresa@phebuslaw.com]**On Behalf Of** Joe Phebus
> **Sent:** Tuesday, April 24, 2007 12:00 PM
> **To:** Griffis, Kirby T.
> **Cc:** dphebus@lawtoncates.com; mcrane@smsm.com
> **Subject:** Mathein v. Davol, Inc., et al.
>
> Dear Mr. Griffis:
>
> Your client has had notice for some time that we would not agree to a protective order. Rather than proceed to file a motion for protective order, you have refused to produce the documents because there is no protective order.
>
> Unless we receive the three categories of documents set forth in numbered paragraph 2 of your client's Rule 26 disclosure or a motion for protective order is filed by week's end, we shall proceed to file an appropriate motion.
>
> Please advise as to the basis of your contention that the plaintiff did not experience a memory coil ring break. You will be receiving by e-mail two photographs that I believe show the broken memory coil that was removed from the plaintiff. Unless you disagree with this interpretation of the photographs, we will expect you to withdraw your objection that product failure in the plaintiff's case did not involve a fracture of the memory coil.
>
> Joseph W. Phebus
> PHEBUS & KOESTER
> 136 West Main Street
> Urbana, Illinois 61801
> Telephone: 217-337-1400
>
> ------------------------------------------------------------------------------------
> ----------------------
>
> *CONFIDENTIALITY, EFFECT, AND INTEGRITY NOTICE: This communication is intended only for the use of the individual or entity to which it is addressed and may contain information that is attorney-client privileged, confidential, or exempt from disclosure under applicable law. If you are not the*

*intended recipient of this information, you are notified that any use, dissemination, distribution, or copying of the communication is strictly prohibited. You are also kindly requested to advise us of the unintended delivery by return e-mail or at 217-337-1400. Unless specifically stated, this communication does not reflect an intention by Phebus & Koester, its representatives or its clients to make any agreement. Nothing contained in this message or in any attachment shall satisfy the requirements for a writing, nor constitute a contract or electronic signature under the Electronic Signatures in Global and National Commerce Act, any version of the Uniform Electronic Transactions Act or any other state or federal statute governing electronic transactions. Please note that e-mails are susceptible to change. Phebus & Koester takes reasonable steps to preserve the integrity of such communications, but shall not be liable for the improper or incomplete transmission of the information contained in this communication, for any delay in its receipt, nor for damage to your system. Nor does Phebus & Koester guarantee that the integrity of this communication has been maintained nor that this communication is free of viruses, interceptions or interference. Thank you for your kind assistance. If you have received this in error, we apologize for any inconvenience.*

```
     This electronic message contains information from the law firm of Spriggs

   This electronic message contains information from the law firm of Spriggs & Hol

This electronic message contains information from the law firm of Spriggs & Hollings
```

E-FILED
Friday, 18 May, 2007 01:30:31 PM
Clerk, U.S. District Court, ILCD

**The New York Times**
nytimes.com

PLAINTIFF'S EXHIBIT
2

March 16, 2007

# History of Hernia Patch Raises Questions on Implant Recalls

By BARRY MEIER

How do makers of implanted medical devices react when one of their products starts breaking?

One answer can be found in the case of a hernia repair device made by a subsidiary of C. R. Bard Inc. In late 2005, the company sent out a recall, urging doctors to stop using some versions of the product because a plastic component could break and cut through a patient's internal organs and tissue.

At the time, Bard executives said they knew about some serious injuries potentially caused by the device, which is known as the Kugel patch. Since then, the Food and Drug Administration has received reports of more than 80 injuries and other problems possibly related to it, including several fatalities.

Bard officials said recently in a statement that they had not recalled the product sooner because complaints about failures were too few and unrelated to raise any alarms. The company also said that both it and the subsidiary, Davol Inc., had reacted responsibly.

But when F.D.A. officials inspected Davol in early 2006, they apparently found other reasons that company officials and the agency might not have been alerted earlier. For example, inspectors reported "discrepancies" and "inconsistencies" in how Davol tracked and analyzed device-related complaints.

And, in several instances, Davol also did not accurately report the possible severity of complaints to the agency, a copy of an inspection report obtained by The New York Times under the Freedom of Information Act shows.

Bard officials, who declined to be interviewed, said in a statement that they have since addressed the agency's concerns, and agency officials said they are monitoring the company's progress.

Still, at a time when the use of implanted medical devices is growing sharply, the episode of the hernia patch is an example of what some experts say is a far wider problem: that some major manufacturers, while contending that they carefully monitor product safety, are not as rigorous as they should be.

Harold Pellerite, a consultant to the medical device industry who worked for two decades at the F.D.A., said he was surprised to discover how little attention many companies pay to the issue.

"Firms take the opposite approach of what the F.D.A. expects," said Mr. Pellerite, who works for Quintiles Consulting in Rockville, Md.

Davol is not the only company where agency inspectors have found problems with how a manufacturer

tracks and reports possible device failures.

Another case in point: a liquid plastic material called Enteryx once sold by Boston Scientific as a treatment for patients with severe acid reflux. The company learned after a patient's death in mid-2004 that some doctors, trying to inject the product at a specific site in the base of the esophagus, could miss and cause damage to other organs, including the heart.

But when agency inspectors went to Boston Scientific in mid-2005, they could find no evidence that the device maker was adequately tracking reports from doctors about that precise problem, a warning issued last year by the agency shows. Soon after the inspection, the company recalled Enteryx, which may have caused dozens of injuries, and perhaps some deaths.

In a statement, Boston Scientific, which was also warned by the agency in that same letter about systematic failures in its product-safety review, said it had since overhauled its procedures.

"We have greatly improved the methods we use to analyze complaints and complaint trends," the company said.

Under F.D.A. rules, producers are required to have systems in place to collect and analyze any complaints they receive from doctors and hospitals about their devices. They are also required to send to the agency any report indicating that a device's failure may have contributed to a patient's death or injury.

But the agency gives device makers significant leeway about how to set up such systems, including what guidelines to use to help them determine when to issue product alerts to doctors or to issue a recall. In addition, a company can decide not to forward a complaint to the agency if it decides after an internal review that its product was not at fault.

One result, said several experts like Mr. Pellerite, is that companies tend to give themselves the benefit of any doubt.

Not long ago, one group of producers, makers of implanted heart devices, agreed to adopt guidelines about how doctors should be alerted to potential product hazards after a controversy involving the Guidant Corporation. But the broader industry has not followed suit, even though seemingly innocuous devices like the hernia patch can cause as much, if not more, havoc in patients.

Kenneth W. Goodman, a co-director of the ethics program at the University of Miami who also served as an adviser to Guidant, said he believed that companies needed to do so because the potential stakes involving implanted medical devices are so high.

"If a doctor holds a device in their hand that might fail and you know about it, then the doctor needs to know about it," Mr. Goodman said.

Chris Lavanchy, a director at ECRI Inc., a firm that evaluates medical devices, said that companies were concerned that sending up a flare too early might jeopardize sales when there was no reason for concern.

"As a producer, you want to feel justified there is a real problem before undertaking a recall," Mr. Lavanchy said.

In the case of the Kugel patch, both Bard and the F.D.A. have urged doctors not to remove the device

unless a patient starts experiencing abdominal pain or a fever, which may be a sign that a fractured device has cut tissue or is causing a peritonitis-like infection.

The recalled large Kugel patches were used frequently to treat abdominal hernias. The small and medium-size versions were not affected. (The Kugel patch is just one of several types of devices used to repair hernias.)

Cynthia J. Wilson, who works for a health care system in Milwaukee, said that she had to undergo emergency bowel surgery in 2004 to repair a hole caused by a dislocated patch.

"I went to the hospital for two weeks and my friends were praying for me," said Ms. Wilson, who has filed a lawsuit against Bard.

The company declined to say how many lawsuits involving the device had been filed or whether it had settled any of them.

The Kugel patch is made of two pieces of mesh that surround a flexible plastic ring. To implant it, a doctor folds a patch, places it at the site of the hernia, which is a spot where an organ pops through internal tissue that has become weak or torn.

The released ring then springs back into its original shape, flattening the patch. The meshlike material then serves as a substrate that allows internal tissue to grow and resolve the hernia.

Davol, which is based in Cranston, R.I., makes the patch in various sizes and shapes. And it was not long after it introduced the largest units in 2002, F.D.A. records show, that company officials began to receive a small but disproportionately high number of complaints about broken rings in those "extra large" versions of the device.

Some of those complaints, agency records indicate, suggested that serious injuries like the one experienced by Ms. Wilson might be occurring.

Bard officials said that the initial numbers were small given the number of patches sold, and the problems cited were too random to form a troubling pattern.

But in mid-2005, Bard said, Davol received 10 complaints about ring breaks over a three-month period starting that June. Six of those reports, including one involving a possible fatality, came from Germany, half of them from the same doctor there.

Bard said that Davol officials initially hadconcluded, based on their review, that the ring breaks were occurring because doctors were improperly folding the patch while implanting it.

As a result, Davol halted production in August 2005 of the extra-large patches, began to hold training sessions for doctors in Germany and started work on revising its instructions to doctors elsewhere about how to implant the device, Bard said.

But the company kept distributing the patch and doctors kept implanting it. That allowed the problem to continue because Davol's assessment proved wrong.

In early December 2005, tests run by the company on a failed patch "suggested for the first time that the source of the ring break was caused by a failure at the ring weld," according to Bard.

Davol soon recalled the extra-large versions of the patch and, several weeks later, expanded that recall to include large versions of the device. It was after that initial patch recall that F.D.A. officials went to Davol's headquarters in early 2006 to do an inspection.

What they found there, their report indicates, was a range of problems, including flaws in the system used by Davol to track complaints.

For example, while Davol had purchased a new tracking system in 2004, that program was incompatible with the earlier one it had been using, resulting in significant "discrepancies" in how problems were recorded and reviewed, agency inspectors reported.

Davol officials disagreed, that same report shows, saying they cross-checked complaints by hand. But inspectors also reported that company officials had also understated in several reports to the agency the potential severity of device-related injuries, including three reports involving injuries and one report involving a possible device-related death.

In a statement, Bard said that it had not submitted those reports to mislead the agency but said that the company had incorrectly categorized the complaints based on the information it had at the time.

Davol also retained an outside safety consultant around the time of last year's inspection to review its operations and recommend changes, the F.D.A. report shows. The company has since redesigned all the versions of the Kugel patch that it recalled, and those products are back on the market.

Tim Ulatowski, an F.D.A. enforcement official, said the agency was monitoring Davol's response to its concerns, adding that it was satisfied with what it had done.

Mr. Lavanchy, the device expert at ECRI, said he believed that the pace of Davol's reactions to problems with the Kugel patch seemed understandable given that it appeared from the company's account that it was in the dark for a long time about both the scope of the problem with the device and its cause.

But Professor Goodman of the University of Miami was less forgiving about how long it took for the company to take action.

"It doesn't take a surgeon to figure out that if you have a plastic object in an abdomen that breaks, it is going to hurt someone pretty badly," he said.

Copyright 2007 The New York Times Company | Home | Privacy Policy | Search | Corrections | XML | Help | Con